[No. 3018-2.   Division Two.   November 9, 1978.]

*In the Matter of the Welfare of*
DANNY CARPENTER, ET AL.

Ronald W. Anderson, for appellant.

Don Herron, Prosecuting Attorney, Mack E. Call, Deputy, and William McGillin, for respondent.

PEARSON, C.J.—Petitioner Ada Carpenter seeks review of an order of the Pierce County Juvenile Court permanently depriving her of parental custody of her minor children, Danny and Darrold, upon a finding that the children are dependent as defined in RCW 13.04.010(2).[1] The petitioner challenges the sufficiency of the evidence to support the court's order of deprivation. Petitioner also challenges the impartiality of the deprivation hearing because the commissioner had previously heard the review of wardship proceedings as to the Carpenter boys, and his order continuing wardship and foster home care had concluded by advising that "serious consideration be given to permanent deprivation proceedings." After carefully reviewing the record, we affirm the order of deprivation.

■ A parent's interest in the custody and control of minor children is worthy of great deference, but the court's primary concern in a deprivation action is the welfare of the child. In re Sego, 82 Wn.2d 736, 513 P.2d 831 (1973); In re Green, 14 Wn. App. 939, 546 P.2d 1230 (1976); In re Price, 13 Wn. App. 437, 535 P.2d 475 (1975).

---

[1] RCW 13.04.010 provides in pertinent part:
"For the purpose of this chapter the words 'dependent child' shall mean any child under the age of eighteen years:
". . .
"(2) Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control . . .
". . .
"For the purpose of this chapter only, all children who have been adjudicated delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the court as hereinafter provided."

■ The standard of review for an order of permanent deprivation is "substantial evidence," meaning that there was clear, cogent, and convincing evidence, showing the necessity for permanent deprivation to be highly probable. *In re Price, supra.* The following evidence establishes a high probability that permanent deprivation is necessary for the physical and mental welfare of Danny and Darrold Carpenter.

On February 24, 1975, a caseworker from the Department of Social and Health Services went to petitioner's home to investigate an allegation of child abuse. She found multiple bruises and abrasions all over Danny, 5, and Darrold, 3. Petitioner and her boyfriend, Charles Mace, who was living there at the time, told the caseworker that the bruises resulted from Mace's having spanked the boys with a belt. Petitioner concurred in the punishment. She said it was to teach the children responsibility and that they had no intention of changing their methods of discipline.

On March 1, 1975, petitioner brought her two little boys to Mary Bridge Hospital for treatment of multiple bruises to their faces and bodies, including apparent human bite marks on their arms and abdomens. Mace had beaten Danny and Darrold after petitioner had left the children in his care. Petitioner told a caseworker that Darrold was punished for wetting his pants, and because Danny had laughed he was also punished. They were hospitalized for 3 days, and then placed in a receiving home.

The boys have a long history of abuse and neglect. Danny has been hospitalized seven times in his life for serious injuries, including drug ingestion, tongue lacerations, severe cuts and head injuries. Petitioner's deceased husband used to throw Danny against the wall when he was a baby. Because of this, petitioner said that it would not surprise her if Danny were brain damaged.

Petitioner's neighbor testified that he had seen Darrold left outside on the porch in the winter with no shirt, shoes, or socks on, and wearing wet diapers. He had seen petitioner's third and youngest child, Carey, crawling around in

short pants and a blouse on the cement in front of petitioner's house for approximately an hour in 40–degree weather. Another witness related that she had nearly run over Carey when the baby was crawling in the street about 6 weeks before the deprivation proceedings.

Darrold and Danny had lice when they entered the receiving home. They used a great deal of profanity, fought constantly, attacked adults around them, broke furniture, and put their fingers down their throats to force themselves to vomit as many as 15 times a day. At night they would wake up crying and screaming, "Don't hit me." They said they were afraid to go outside during the day because they did not want a certain man to find them.

Dr. Glen Easley found Danny to be developmentally delayed by 1 year "primarily because he is psychologically an orphan." Danny recognizes no parental figures as his own. He is chronically frightened, anxious, and preoccupied with physical punishment, with slapping, gouging, and with things being rough and loud. He suffers from a severe personality disturbance, impaired coordination, and borderline retardation. The conclusion of the doctor was that there is no chance that Danny could recover in the home where his condition developed, and that adoption is the only alternative.

Darrold suffers from even more psychological damage than Danny, has had less mothering, and exhibits worse tantrums. He is a very frustrated and fearful child. Deprivation was also recommended for him.

Petitioner loves her children, but she was diagnosed as having borderline retardation, high dependency, and tunnel vision such that if another relationship becomes more important than her children, her children may not be cared for. Dr. Steven Sutherland found that her judgment is as retarded as her intellect, and that she could still be dependent on a man who might abuse her children. He also found that it would be difficult for her to handle the stress of raising three children on her own.

Petitioner herself testified that having both boys back would be too hard on her. There was evidence that she had beaten them independently of Mace. The Department of Social and Health Services arranged for the boys to visit her after they were taken away in March. But she was not allowed to see them in her home after the second such visit on May 28, because when the caseworker came to pick up Danny, he was bruised from petitioner's spanking him. Petitioner was subsequently invited to visit the boys in the Department of Social and Health Services office, but she refused to do so.

Petitioner refused to cooperate with caseworkers she did not like. At the review of wardship hearing, Commissioner Boyle had ordered petitioner to attend classes for parents. She failed to attend the classes or follow through on counseling or homemaking services offered by the Department of Social and Health Services. She has not followed any recommendations of the department other than attendance at some Parents Anonymous meetings. She testified that she will not take the classes for parents or counseling until she gets the boys back. We are satisfied that these facts constitute substantial evidence showing the necessity of permanent deprivation to be highly probable.

During oral argument petitioner challenged the court's findings of fact. Since she failed to challenge them in her brief, we need not address them. *Cf. State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977). However, we choose to do so in the hope that our observations will result in better drafted findings in cases to come. Under the heading "Findings of Fact," the court simply recited the testimony of several witnesses, rather than stating the factual findings of the court. But under the heading "Conclusions of Law," the court found that Danny and Darrold Carpenter are dependent children,

> due to the negligence and abuse over a period of years, which their mother allowed or contributed to and also because the boys are severely emotionally disturbed and need special parenting on a permanent basis; that Ada

Carpenter has failed, neglected or refused to get sufficient help to give her the skills to properly parent these boys. That Ada Carpenter, as a result of her mental deficiencies and borderline retardation, is unable to meet the needs of her children at this time.

The court further found, "It would be in the best interest of Danny and Darrold Carpenter that they be made permanent wards of the Pierce County Juvenile Court and placed in the custody of the Department of Social and Health Services for the purposes of adoption . . ."

█ █ A finding of fact is "A conclusion by way of reasonable inference from the evidence." Black's Law Dictionary (4th ed. rev. 1968). CR 52 requires that in all actions tried upon the facts without a jury, the court shall find those facts specially and state separately its conclusions of law. The rule specifically requires findings and conclusions to be entered in connection with all final decisions in custody proceedings. *See also Wold v. Wold*, 7 Wn. App. 872, 503 P.2d 118 (1972). Standing alone, the findings of fact in the present case fail to state the *court's* findings; however, the above stated "conclusions of law" adequately set forth the court's findings of fact. A conclusion of law which is in the nature of a finding of fact will be treated as such on appeal. *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963); *State v. Dorrough*, 2 Wn. App. 820, 470 P.2d 230 (1970).

Finally, petitioner asserts that her right to a fair and impartial hearing was violated because the deprivation proceedings were heard by the same commissioner who had previously reviewed the wardship and had ordered, among other things, that serious consideration be given to permanent deprivation proceedings. Petitioner contends for the first time on appeal that this statement was tantamount to a judgment of deprivation before the deprivation proceedings, and that the commissioner should have disqualified himself.

■ A party litigant is entitled, as a matter of right, to a change of judge upon the timely filing of a motion and affidavit of prejudice against a judge about to hear his cause or any substantial portion thereof on the merits. Such a motion and affidavit seasonably filed is deemed to establish prejudice. *See* RCW 4.12.050; *State v. Franulovich,* 89 Wn.2d 521, 573 P.2d 1298 (1978); *State v. Dixon,* 74 Wn.2d 700, 446 P.2d 329 (1968); *State ex rel. Sheehan .v. Reynolds,* 111 Wash. 281, 190 P. 321 (1920). But a litigant who proceeds to trial knowing of potential bias by the trial court waives his objection and cannot challenge the court's qualifications on appeal. *Brauhn v. Brauhn,* 10 Wn. App. 592, 518 P.2d 1089 (1974). A party may not speculate upon what rulings the court will make on propositions involved in the case and, if the rulings do not happen to be in his favor, then for the first time raise the issue on appeal. *See State v. Franulovich, supra; State ex rel. Lefebvre v. Clifford,* 65 Wash. 313, 118 P. 40 (1911).

Aside from the procedural failure of petitioner's argument, we are satisfied that the court's order, containing both a recommendation that petitioner become involved in certain parenthood programs and a warning that permanent deprivation proceedings were a serious consideration, did not evidence judicial prejudice, but rather evidenced the court's purpose of persuading petitioner to take the recommended action.

The order of permanent deprivation is affirmed.

Petrie and Soule, JJ., concur.