# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re Adoption of M.S.M.-P., a Minor. | ) | No. 69222-4-I |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| A.K. AND S.K., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| N.P., | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 19, 2014 |

SPEARMAN, C.J. — A.K. petitioned the court for an order terminating N.P.'s

parental rights to N.P.'s son, M.S.M.-P. and granting A.K. permanent legal custody

with the right to adopt M.S.M.-P. as his own child. In a hearing on the petition the

court heard testimony and took evidence regarding the termination and the

prospective adoption. Pursuant to RCW 26.33.060, the trial court closed the

hearing to the public, but did not follow the procedure under Seattle Times Co. v.

Ishikawa, 97 Wn.2d 30, 640 P.2d 716 (1982). The court granted the petition and

N.P. appeals, claiming the closure violated his right to a public trial under article I,

section 10 of the Washington State Constitution and the First Amendment to the

United States Constitution. We hold that, while N.P. raises a constitutional claim of

error, because he does not demonstrate actual prejudice, he may not raise this claim for the first time on appeal.

## FACTS

M.S.M.-P., a minor, was born in April 2000 and is the biological child of S.K. and N.P., who were never married.[1] The relationship between S.K. and N.P. was a violent one. On multiple occasions S.K. sought and obtained no-contact orders against N.P. At least two incidents of domestic violence by N.P. against S.K. occurred while S.K. was pregnant with M.S.M.-P. On one of these occasions, N.P. kicked and hit S.K. in the stomach, knocked her to the ground and then threw her on a bed. Within two weeks of M.S.M.-P's birth, his parents' relationship ended. One month later, N.P. was jailed for violating the no-contact order. On one occasion, N.P. assaulted S.K., breaking a wooden spoon over her thigh in front of M.S.M.-P. Although M.S.M.-P. was only two years old at the time, he cried for several hours after witnessing the assault. N.P. has also been convicted of felony harassment for threatening to kill S. K. During the first three years of M.S.M.-P.'s life N.P. visited him less than ten times. He has not seen M.S.M.-P. since then. He has not acknowledged M.S.M.-P.'s birthdays, other holidays, or had any other contact with him. Until this litigation commenced, M.S.M.-P. had no recollection of N.P.

In 2002, when M.S.M.-P. was two years old, S.K. began a relationship with A.K. S.K. and A.K. began living together in 2003 and married in 2008. Since he began living with S.K., A.K. has cared for M.S.M.-P. and has been the only father

---

[1] The entire file in this case is sealed. Initials will be used as necessary to identify parties and other individuals.

M.S.M.-P. has known. In early 2010, A.K. decided to adopt M.S.M.-P. Even though N.P. had had no contact with M.S.M.-P. for nearly seven years, he refused S.K.'s request for his consent to the adoption.

On March 18, 2010, A.K. filed a petition to terminate N.P.'s parental rights and to obtain permanent custody with the right to adopt.[2] A hearing on the petition was held on June 18, 2012. All parties were represented by counsel, but because N.P. was incarcerated, he participated by phone. At the beginning of the hearing, the trial court cited RCW 26.33.060 and engaged in the following exchange with the parties' attorneys:

> THE COURT: I read the materials which were submitted, including the various trial briefs. I looked at the statute on proceedings, [RCW] 26.33.060. It does say, in part: "The general public shall be excluded and only those persons shall be admitted whose presence is requested by any person entitled to notice under this chapter, or whom the judge finds to have a direct interest in the case or in the work of the Court."
>
> So I was proposing to put a sign on the courtroom door, indicating that the hearing was closed by law. And is there—anybody have any input or any thoughts about that at all?
>
> [Counsel for A.K.]: I think that would be fine. What we generally do in these proceedings is when someone walks in, we all look and see who it is.
>
> THE COURT: Okay. All right.
>
> [Counsel for N.P.]: No objection.
>
> THE COURT: Okay. All right.

---

[2] Under RCW 26.33.100, a prospective adoptive parent seeking to adopt the child of a spouse may file a petition for termination of the parent-child relationship of a parent. The parent-child relationship

> may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1).

Verbatim Report Proceedings (VRP) at 5-6. Argument was heard and evidence was taken while the courtroom was closed. N.P. testified by telephone from Coyote Ridge Prison but did not otherwise listen in on the proceedings. At no time did N.P. or his attorney object to the fact that the courtroom was closed, nor did either of them request anyone's presence at the hearing.

The trial court made an oral ruling on June 20, 2012, granting the petition to terminate N.P.'s parental rights and indicating the adoption would move forward. A.K. thereafter filed a petition for adoption, which was granted. On July 27, 2012, the trial court entered written findings of fact and conclusions of law terminating N.P.'s parental rights, an order terminating N.P.'s parental rights, findings of fact and conclusions of law as to the adoption petition, and a decree of adoption.[3] N.P. appeals, claiming only that the trial court violated his constitutional public trial rights. His challenge to the trial court's findings of fact and conclusions of law is based solely on his constitutional claim.

## DISCUSSION

This court reviews claims based on article I, section 10 of the Washington constitution de novo. In re Dependency of J.A.F. E.M.F., V.R.F., 168 Wn. App. 653, 661, 278 P.3d 673 (2012). Whether a statute is constitutional is a question of law reviewed de novo. In re Dependency of M.S.R. and T.S.R., 174 Wn.2d 1, 13, 271 P.3d 234 (2012). Statutes are presumed constitutional. State v. McCuistion, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012) cert. denied, 133 S.Ct. 1460, 135 L.Ed.2d 368 (2013). The party challenging the constitutionality of a statute bears

---

[3] At the time the petition for termination was filed, M.S.M.-P. was nine years old. At the time of trial, he was 12 years old.

the burden to prove that it is unconstitutional beyond a reasonable doubt. In re Dependency of I.J.S., 128 Wn. App. 108, 115, 114 P.3d 1215 (2005).

The statute at issue in this case is RCW 26.33.060, which provides that, in all hearings under chapter 26.33 RCW,[4] "[t]he general public shall be excluded and only those persons shall be admitted whose presence is requested by any person entitled to notice under this chapter or whom the judge finds to have a direct interest in the case or in the work of the court."

For the first time on appeal, N.P. contends that his rights to a public hearing under the First Amendment to the United States Constitution ("Congress shall make no law ... abridging the freedom ... of the press . . . .")[5] and article I, section 10 of the Washington Constitution ("Justice in all cases shall be administered openly . . . .")[6] were violated when the trial court followed the procedure under

---

[4] Chapter 26.33 RCW governs adoptions.

[5] A.K. contends that N.P. does not have standing to claim a violation of the First Amendment freedom of the press protection by invoking the rights of a third party (i.e., the press), citing Bender v. Williamsport Area School District, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) and Lopez v. Candaele, 630 F.3d 775 (9th Cir. 2010). N.P. does not respond to this argument. We nonetheless disagree with A.K. Bender and Lopez referred to the standing requirements needed to invoke the jurisdiction of federal courts. Bender, 475 U.S. at 541-42; Lopez, 630 F.3d at 785. N.P. does not, however, contend that the First Amendment provides greater or different protection here than article I, section 10 and does not analyze the First Amendment separately. Thus, we do not consider the First Amendment separately.

[6] A.K. does not contend that N.P. lacks standing to raise an article I, section 10 violation. Furthermore, N.P. does not appear to be asserting a violation of article I, section 10 on behalf of the public at large. Therefore, it is unnecessary to determine whether N.P. has third-party standing, an issue addressed in some of the cases cited by N.P. See State v. Wise, 176 Wn.2d 1, 16 n.9, 288 P.3d 1113 (2012) (noting the Washington Supreme Court has not yet decided whether a criminal defendant has standing to raise an article 1, section 10 challenge when the public is excluded from court proceedings); In re Detention of Reyes, 176 Wn. App. 821, 309 P.3d 745, 757-58 (2013) (civilly committed sex offender lacked standing to assert that public's rights under article I, section 10 were violated when it was excluded from a pretrial motion hearing); In re Detention of Ticeson, 159 Wn. App. 374, 381-82, 246 P.3d 550 (2011) (appellant, as a member of public, was protected by article I, section 10 and thus there was no reason to apply third-party standing rule to rights granted to public at large), abrogated on other grounds by State v. Sublett, 176 Wn.2d 58, 72, 292 P.3d 715 (2012).

RCW 26.33.060 without applying the Ishikawa requirements before it closed the courtroom.[7] A.K. argues that N.P.'s appeal should be rejected because (1) adoption records and hearings are an exception to the right to a public hearing and RCW 26.33.060 properly balances various parties' interests while acting in the best interest of the child; (2) RCW 26.33.060 closes the courtroom only where no party asks that it be opened;[8] and (3) N.P. fails to show actual prejudice resulting from the courtroom being closed. We conclude that N.P. raises a constitutional claim of error but agree with A.K. that N.P. does not demonstrate actual prejudice and therefore may not raise this claim for the first time on appeal.

Article I, section 10 guarantees the public open access to judicial proceedings and court documents in civil and criminal cases. In re Dependency of J.A.F., 168 Wn. App. at 660 (citing Dreiling v. Jain, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)). Similarly, the First Amendment "preserves a right of access to court proceedings and records." Tacoma News, Inc. v. Cayce, 172 Wn.2d 58, 65, 256 P.3d 1179 (2011). "This court has clearly and consistently held that the open administration of justice is a vital constitutional safeguard and, although not without exception, such an exception is appropriate only under the most unusual

---

[7] At oral argument before this court, N.P. clarified that his position is that only the termination portions of the proceedings below, not the entire adoption proceedings, were subject to Ishikawa closure requirements.

[8] We reject this argument. A.K. contends that, under RCW 26.33.060, any party can open the courtroom at will by requesting that anyone and everyone be let into the courtroom. Thus, he contends, the statute barely closes the courtroom at all. This is not what the statute says. Under the statute, the general public "shall be excluded" and only those persons whose presence is requested by a person entitled to notice or found by the judge to have a direct interest in the case or work of the court may be admitted. The statute does not permit a party to demand that the courtroom doors be opened to anyone and everyone who wishes to enter.

circumstances and must satisfy the five requirements as set forth in [Ishikawa]." In re Detention of D.F.F., 172 Wn.2d 37, 41, 256 P.3d 357 (2011).

Under Ishikawa, before courts order restrictions on access to criminal hearings or the records from criminal hearings, five requirements must be met: (1) the proponent of closure must make a showing of the need for a closure and, when closure is sought based on an interest other than the right to a fair trial, a serious and imminent threat to that interest must be shown; (2) anyone present when the closure motion is made must be given an opportunity to object to the closure; (3) the court, the proponents of, and the objectors to the closure should analyze whether the proposed method for curtailing open access would be the least restrictive means available and effective in protecting the threatened interests; (4) the court must weigh the competing interests of the defendant and the public; (5) the order must be no broader in its application or duration than necessary to serve its purpose. Ishikawa, 97 Wn.2d at 37-39. In addition, the trial court must enter specific findings justifying its closure order. State v. Bone-Club, 128 Wn.2d 254, 260, 906 P.2d 325 (1995); J.A.F., 168 Wn. App. at 661. Courts have held that the Ishikawa procedure applies to civil proceedings. See D.F.F., 172 Wn.2d at 41-42 (applying Ishikawa to civil involuntary commitment proceeding).

A.K. contends adoption hearings are nonetheless an exception to the right to a public hearing. He contends that cases cited by N.P. in which courts have held that Ishikawa applies are distinguishable, pointing out that they consist of criminal

cases;[9] a case involving civil commitment (effectively incarceration against one's will, D.F.F., 172 Wn.2d at 40 n.2);[10] and cases in which the issue of closing the hearing or sealing records was raised at the trial court level, where courts on appeal appropriately determined what standards apply to closure.[11]

A.K. contends that this case presents a different scenario because it involves an adoption proceeding. He cites the following statement by the Washington Supreme Court in Cohen v. Everett City Council, 85 Wn.2d 385, 535 P.2d 801 (1975): "There are exceptional circumstances and conditions which justify some limitations on open judicial proceedings. For obvious reasons adoption matters are usually heard privately as authorized by statute." Id. at 388 (citing RCW 26.32.100, repealed by Laws 1984, ch. 155, § 38, eff. Jan. 1, 1985).[12] The

---

[9] See Bone-Club, 128 Wn.2d at 256-62 (criminal defendant's right to public trial under article I, section 22 of Washington Constitution requires that the trial court, before closing a pretrial suppression hearing, follow five criteria under Ishikawa and its progeny; failure to do so in case of record lacking any consideration of defendant's public trial rights, results in presumption of prejudice and remand for new trial), State v. Brightman, 155 Wn.2d 506, 514-18, 122 P.3d 150 (2005) (criminal defendant's public trial rights under article I, section 22 of Washington Constitution and sixth amendment to United States Constitution were violated where trial court fails to engage in Bone-Club analysis before closing courtroom during jury selection; failure to apply Bone-Club results in remand for new trial).

[10] See D.F.F., 172 Wn.2d at 38-49 (court rule providing that involuntary commitment proceedings be closed to the public unless the person who was the subject of the proceedings or his attorney filed with the court a written request that the proceedings be public violated right to open administration of justice under article I, section 10; remedy was new commitment trial).

[11] See Tacoma News, 172 Wn.2d at 60-61 (media challenged closure of courtroom during deposition of witness in criminal trial; court held that neither article I, section 10 nor the First Amendment was violated by trial court's ruling that deposition proceeding was not open to public); Dreiling, 151 Wn.2d at 905-07, 915 (media sought to intervene and unseal records related to a motion to terminate a shareholder's derivative suit; Washington Supreme Court granted review on limited question of whether trial court applied correct legal standard in sealing material and briefing, held that under article I, section 10 and state common law, Ishikawa must be applied to documents filed in support of dispositive motions, including motions to terminate); Ishikawa, 97 Wn.2d at 32-33 (media challenged closure of pretrial hearing involving motion to dismiss in a criminal case).

[12] RCW 26.32.100 read, in part, "all such hearings, as well as any hearing incidental to an adoption, shall not be public unless specially ordered by the court." RCW 26.32.100.

specific issue in Cohen was whether the trial court properly entered an order sealing a written transcript of the proceedings of a city council license revocation action, after the trial court has considered the transcript on an appeal of that proceeding. Id. at 386. The court held that the Washington constitution "mandates an open public trial in a civil case, absent any of the statutory exceptions or compelling reasons calling for exercise of the court's inherent power to control its proceedings . . . ." Id. at 388-89. It held that, in that case, because the trial court's review of the city council's action was of a transcript of proceedings before the city council, the record was the equivalent of testimony and became public property. Id. at 389. The statement cited by A.K. was made in the context of the court's general discussion of public trial rights.

A.K. also cites In re the Application of William Sage, 21 Wn. App. 803, 586 P.2d 1201 (1978). There, the appellant, Sage, was an adopted child who, as an adult, was denied access to inspect adoption records that were sealed pursuant to a Washington statute. Id. at 804. This court affirmed the superior court's denial of access, holding that access was not required under the statute and that the trial court did not err in ruling that Sage did not establish good cause to inspect the records. Id. at 807-11. In describing the justifications for confidentiality and privacy in the area of adoption law, this court noted,

> In the adoption context, our courts are directed to make decisions consistent with "the best interests of the child."[1] The sealed records statutes are a codification of that directive. Confidentiality encourages and facilitates preadoption investigation and helps to strengthen the adoptive family as a social unit.

Id. at 805-06 (footnote omitted). We also held that full disclosure was not mandated by the public disclosure act, chapter 42.17 RCW, and that the sealed records statute did not violate Sage's equal protection rights. Id. at 811-13.

Cohen and Sage support the general proposition that heightened privacy in adoption matters has been approved by the courts. Likewise, our legislature has enacted laws that provide greater privacy and confidentiality in adoption matters and recognize that the best interests of the children involved in these matters are paramount. See, e.g., RCW 26.33.330 (adoption records are sealed and not open to inspection except upon order of the court for good cause shown or by using procedure under RCW 26.33.343); RCW 26.33.010 ("The guiding principle [in adoptions] must be determining what is in the best interest of the child."). But neither Cohen nor Sage addressed constitutional public trial rights as they relate to termination proceedings arising in the context of adoption matters. Furthermore, both cases predated Ishikawa.

We find J.A.F., a recent decision of this court, to be more on point, as it addressed closure in the context of termination proceedings. In J.A.F., all parties agreed in open court that a federal statute required the court to close the courtroom before a particular witness, Harris, could testify about the drug treatment of the children's father, Fleming. 168 Wn. App. at 659. Trial counsel for the mother, Tucker, even stated a preference for closing the entire trial. Id. at 660. The parents appealed the trial court's order terminating their parental rights. They argued, among other things, that the partial closure violated article I, section 10 of the Washington State Constitution. Id. at 656. We explained that the appellants demonstrated a violation of article I, section 10 because the trial court closed part

10

of the proceedings without applying the Ishikawa factors and did not articulate findings justifying the closure. Id. at 662. We nonetheless refused to review the claim of error because the appellants did not demonstrate actual prejudice. Id. at 663-64.

Here, similar to J.A.F., the termination hearing was closed without applying Ishikawa. Although, the termination petition in this case arises in the context of an adoption matter brought by a prospective adoptive parent, insofar as N.P.'s interests and rights are concerned, the distinction is immaterial. Whether the termination petition was brought by the State or by a prospective adoptive parent, the same potential outcome is at stake: termination of the parent-child relationship. In a case where a party faces such a potential consequence, the concerns underlying constitutional public trial rights are undoubtedly present. We conclude that N.P. raises a constitutional error.

However, as in J.A.F., we also conclude that N.P. waived the error by failing to object below. A party may raise for the first time on appeal a manifest error affecting a constitutional right. RAP 2.5(a)(3). A manifest error requires a showing of actual prejudice. State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). To demonstrate actual prejudice, there must be a "'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" Id. (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). To determine whether an error is practical and identifiable, the appellate court must put itself in the shoes of the trial court to ascertain whether, given what the trial court knew at the time, the court could have corrected the error. O'Hara, 167 Wn.2d at 100.

11

N.P. contends that the record here "suffers no absence of prejudice" because, unlike in J.A.F., he was not personally present when the courtroom was ordered closed and the entire trial took place when the courtroom was closed. But it is N.P.'s burden to affirmatively show prejudice and he points to no practical or identifiable consequence that the closure had on the trial of the case. See In re Reyes, 176 Wn. App. 821 (appellant who was civilly committed as sexually violent predator could not raise claimed violation of article I, section 10 for first time on appeal where he did not show actual prejudice or provide a plausible theory of how he was harmed by closure of hearing on his motion to dismiss). Furthermore, if we put ourselves in the shoes of the trial court, as we must, it is evident that under J.A.F., which we decided one week before the trial of this case, had N.P. raised the objection below the trial court would have had an opportunity to correct the error.

N.P. also relies on D.F.F., 172 Wn.2d 37, to argue that his claim is properly before us. In that case, D.F.F. was involuntarily committed for psychiatric treatment under chapter 71.05 RCW. She did not object to the trial judge's closure of the proceedings pursuant to former Mental Proceeding Rules (MPR) 1.3.[13] On appeal, D.F.F. argued that the closure violated her rights under article 1, section 10. The Supreme Court was unanimous that former MPR 1.3 violated article 1, section 10, but divided on whether D.F.F. made a sufficient showing of prejudice to warrant reversal of the commitment order and a new hearing.

---

[13] Former MPR 1.3, which was rescinded effective April 30, 2013, read in relevant part:

Proceedings had pursuant to RCW 71.05 shall not be open to the public, unless the person who is the subject of the proceedings or his attorney files with the court a written request that the proceedings be public.

Four justices joined in the lead opinion, which concluded that the closure was sufficient, by itself, to warrant a new trial. The lead opinion relied primarily on criminal cases involving public trial rights under article 1, section 22, which guarantees a criminal defendant a "speedy public trial." Those cases hold that the failure to raise a public trial objection in the trial court does not waive the right because, in the criminal context, the closure results in "structural error"[14] and prejudice is presumed. State v. Wise, 176 Wn.2d 1, 16, 288 P.3d 1133 (2012); Bone-Club, 128 Wn.2d at 257, 261-62. The lead opinion justified its reliance on criminal cases, noting that "commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called 'criminal' or 'civil.'" D.F.F., 172 Wn.2d at 40, n.2, quoting In re Application of Gault, 387 U.S. 1, 50, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

Two justices rejected the lead opinion's reliance on criminal precedent and agreed with the three dissenting justices that "the 'structural error' analysis does not apply to the civil context." Id. at 48. Nonetheless, they concurred in the result because since D.F.F. was "committed after a closed hearing, [she] demonstrate[d] sufficient prejudice to warrant relief." Id.

D.F.F. is of no help to N.P. The case makes clear that the "structural error" analysis is inapplicable in a civil case, such as a termination proceeding. Thus, here, there is no presumption that N.P. was prejudiced by the closure.

---

[14] "An error is structural when it 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" State v. Momah, 167 Wn.2d 140, 149, 217 P.3d 321 (2009) (quoting Washington v. Recuenco, 548 U.S. 212, 218-19, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006)) (alteration in original) (quoting Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

Furthermore, the majority in D.F.F. appears to have concluded that because D.F.F. was confined as a result of a closed hearing, no showing of actual prejudice was necessary to entitle her to a new trial. N.P. cannot claim he was subject to the same risk. Unlike a criminal or involuntary commitment trial, the proceeding in this case could not result in N.P.'s confinement. Thus, D.F.F. is inapposite.

Moreover, other than the closure, N.P. does not dispute the trial court's findings of fact or claim that the trial court's conclusions of law are erroneous.[15] Thus, there is little, if any, likelihood that a new termination trial would yield a different outcome. Yet, reversing the termination order would have the additional consequence of setting aside M.S.M.-P.'s adoption. The trial court found that N.P.'s withholding of his consent to the adoption was not in the best interests of M.S.M.-P. We see nothing in the record to dispute this finding. In light of that, we see no reason, and N.P. offers none, to disturb the finality of M.S.M.-P.'s adoption by the only father he has known.

We conclude the closure of that portion of the proceedings below relating to the termination of N.P.'s parental rights violated article 1, section 10 and was thus, error of constitutional magnitude.[16] But because N.P. failed to object and fails to demonstrate actual prejudice, he waived the error and may not assert it for the first time on appeal.

---

[15] The trial court found, among other things, that: N.P. displayed a "serious pattern of criminal conduct," including his incarceration at the time of the hearing for drug and firearms violations; N.P. had never expressed "personal concern for the health, education and general well-being of [M.S.M.-P.]."; N.P. had never spent time with M.S.M.-P., whether incarcerated or free; N.P. had never expressed love or affection for M.S.M.-P.; N.P. was an unfit parent and his withholding of consent to the adoption was contrary to M.S.M.-P.'s best interests; and that, until the adoption proceedings began, M.S.M.-P. had no memory of N.P. CP 250-53.

[16] In light of our disposition of this case, it is unnecessary to, and we do not, decide the constitutionality of RCW 26.33.060 in an adoption context.

No. 69222-4-I/15

Affirmed.

WE CONCUR:

_____    Spearman, C.J.
                           _____

_____    Becker, J.
Dwyer, J.                  _____

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAY 19  AM 10: 05

15