
F I L E

[ ... ]NG OFFICE
SU[ ... ] , C[...] C[...] V[...]HINGTON

OCT 0 8 2015

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Oct. 8, 2015

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Adoption of M.S.M.-P. | No. 90467-7 |
| N.P., | |
| Petitioner, | En Banc |
| v. | |
| A.K. and S.K., | |
| Respondents. | Filed OCT 0 8 2015 |

GONZÁLEZ, J.—In 2012, N.P.'s parental rights to M.S.M.-P. were terminated in a closed proceeding. N.P.'s attorney affirmatively consented to the closure, and soon afterward, M.S.M.-P. was adopted by his stepfather. N.P. seeks reversal because the trial court closed the proceeding without analyzing the *Ishikawa*[1] factors. We conclude N.P. waived his right to open proceedings under article I, section 10 of our state constitution.

## FACTS AND PROCEDURAL HISTORY

M.S.M.-P. was born in April 2000. His biological parents, S.K. and N.P., met in 1999, and their relationship was marked from the beginning by physical abuse

---

[1] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

against S.K. S.K. and N.P.'s relationship ended within two weeks of M.S.M.-P.'s birth. During the first three years of M.S.M.-P.'s life, N.P. visited him fewer than 10 times, and he has not seen or had any contact with him since then.

In 2002, when M.S.M.-P. was two years old, his mother S.K. began a relationship with A.K. S.K., A.K., and M.S.M.-P. have lived together as a family since 2003, and S.K. and A.K. married in 2008. A.K. has cared for M.S.M.-P. since they began living together and has been the only father M.S.M.-P. has known. S.K. and A.K. have had two other children together. In early 2010, A.K. decided to adopt M.S.M.-P. and sought N.P.'s consent. After N.P. refused to consent to the adoption, A.K. filed a petition to terminate N.P.'s parental rights and to obtain permanent custody with the right to adopt. S.K. joined in the petition.

On June 18, 2012, the trial court held a hearing on the petition, including both the termination and adoption proceedings. N.P. appeared by phone to testify from Coyote Ridge Corrections Center, where he was serving sentences for drug and firearm violations. Pursuant to RCW 26.33.060—which provides that "[t]he general public shall be excluded" from adoption hearings "and only those persons shall be admitted whose presence is requested by any person entitled to notice under this chapter, or whom the judge finds to have a direct interest in the case or in the work of the court"—the trial judge closed the entire hearing to the public. N.P. does not challenge the closure of the adoption portion of the proceeding, so it is not before us.

*See In re Adoption of M.S.M.-P.*, 181 Wn. App. 301, 307 n.7, 325 P.3d 392 (2014).[2]

Before the judge closed the hearing, he recited the adoption statute and proposed putting a sign on the courtroom door indicating that the hearing was closed by law. He asked whether "anybody ha[s] any input or any thoughts about that at all." Verbatim Report of Proceedings at 6. Counsel for A.K. responded that it would be fine and counsel for N.P. stated, "No objection." *Id.* The trial court did not analyze the *Ishikawa* factors on the record. At no time did N.P. or his attorney object to the fact that the courtroom was closed, nor did they make a request for anyone's presence at the hearing.

On June 20, 2012, the trial court orally granted the petition to terminate N.P.'s parental rights and allowed the adoption to move forward. On July 27, 2012, the trial court entered written findings of fact and conclusions of law terminating petitioner's parental rights, findings of fact and conclusions of law on the adoption, and an adoption decree. N.P. appealed, arguing for the first time that the closure violated his right to a public trial under article I, section 10 of the Washington State Constitution. The Court of Appeals concluded N.P. could not raise the issue for the first time on appeal and affirmed. *In re Adoption of M.S.M.-P.*, 181 Wn. App. at 312 (citing *In re Dependency of J.A.F.*, 168 Wn. App. 653, 278 P.3d 673 (2012); RAP 2.5(a)(3); *State*

---

[2] N.P.'s counsel informed the Court of Appeals during oral argument "that his position is that only the termination portions of the proceedings below, not the entire adoption proceedings, were subject to *Ishikawa* closure requirements." *In re Adoption of M.S.M.-P.*, 181 Wn. App. at 307 n.7. He has not disavowed this representation.

*v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). We granted N.P.'s petition for review. *In re Adoption of M.S.M.-P.*, 182 Wn.2d 1001, 342 P.3d 326 (2015).

ANALYSIS

N.P. seeks a new termination proceeding on the grounds that the closure of that portion of the proceedings violated article I, section 10 of the Washington State Constitution. He asserts that although his counsel declined to object to the closure, he may raise the issue for the first time on appeal because it is an issue of constitutional magnitude. The Court of Appeals found constitutional error but declined to consider it on appeal because N.P. did not preserve the error and did not show actual prejudice. *In re Adoption of M.S.M.-P.*, 181 Wn. App. at 312 (citing RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 99). We affirm on different grounds. We find that N.P.'s attorney's decision to consent to the closure was a valid waiver of N.P.'s rights under article I, section 10. We hold that in a parental termination proceeding, a statement from a litigant's attorney that there is no objection to a closure is a sufficient waiver of the litigant's rights under article I, section 10.[3]

N.P. argues that there was no valid waiver because N.P. was not advised on the record of the right to a public trial and was not present when the closure was ordered. In criminal proceedings a defendant must personally make an informed waiver of

---

[3] Neither party sought our review of the Court of Appeals' decision that closing the termination portion of the proceedings without considering the *Ishikawa* factors on the record violated article I, section 10. Thus our opinion is limited to the specific question before us—whether N.P. waived his rights under article I, section 10.

certain fundamental constitutional rights. *See, e.g., Brookhart v. Janis*, 384 U.S. 1, 7-8, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966) (right to plead not guilty); *Johnson v. Zerbst*, 304 U.S. 458, 464-65, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) (right to counsel); *Patton v. United States*, 281 U.S. 276, 312, 50 S. Ct. 253, 74 L. Ed. 854 (1930) (right to trial by jury); *United States v. Gordon*, 264 U.S. App. D.C. 334, 829 F.2d 119, 123 (1987) (right to be present at trial). These rights are fundamental to ensure fair and constitutional criminal trials, and so such decisions have been deemed "of such moment that they cannot be made for the defendant by a surrogate." *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004). But whether to exclude the public from all or a portion of a hearing on a civil parental termination petition is distinct from the highly consequential decisions in criminal cases that are reserved to criminal defendants alone.

We find that the right of a litigant in a parental termination proceeding to an open hearing under article I, section 10 is more commensurate with other constitutional rights that may be waived through counsel. *See, e.g., Wilson v. Gray*, 345 F.2d 282, 287-88 (9th Cir. 1965) (right to confrontation may be waived by criminal defendant's counsel as a matter of trial tactics or strategy); *State v. Valladares*, 99 Wn.2d 663, 671-72, 664 P.2d 508 (1983) (withdrawal of pretrial motion to suppress evidence waived constitutional rights); *Basil v. Pope*, 165 Wash. 212, 218-19, 5 P.2d 329 (1931) (failure to challenge juror or move for mistrial waives litigant's right to claim deprivation of right to a fair trial because of biased juror); *In*

*re Welfare of Carpenter*, 21 Wn. App. 814, 820, 587 P.2d 588 (1978) (in a parental termination proceeding, failure to affidavit a potentially biased judge waives right to assert deprivation of fair trial on appeal). Following *Basil*, *Carpenter*, and *Valladares*, we hold that in a parental termination case, counsel can effectively waive a party's article I, section 10 rights by saying "no objection" on the record when the judge inquires about closing the court. We stress that this waiver is personal to that party and does not affect any other person's article I, section 10 rights.

CONCLUSION

We hold N.P. waived his right to open proceedings under article I, section 10 and affirm.

González, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

González, J.

Fairhurst, J.

No. 90467-7

STEPHENS, J. (concurring)—The majority frames the question in this case as whether N.P. waived his right to a public trial under article I, section 10 of the Washington State Constitution. But, this is not the first time we have considered the validity of a waiver of public trial rights. We should acknowledge what we have said. Recently, in *State v. Frawley*, a majority of this court held that in a criminal trial, the defendant must *personally* make a knowing, intelligent, and voluntary waiver of the public trial right. 181 Wn.2d 452, 461-63, 334 P.3d 1022 (2014) (Johnson, J., lead opinion), 467-69 (Stephens, J., concurring), 471-76 (Gordon McCloud, J., concurring). While the waiver need not be made on the record, the record must indicate the defendant's affirmative assent. *Id.* at 461-62 (Johnson, J., lead opinion), 469 (Stephens, J., concurring), 475-76 (Gordon McCloud, J., concurring); *see also State v. Herron*, No. 89571-6, slip. op. at 6-7 (Wash. Aug. 20, 2015) (describing holding in *Frawley* and also noting requirement to afford a meaningful opportunity to object to closure).

*Frawley* and *Herron* confirm that the waiver standard with respect to public trial rights in the criminal context aligns closely with the cases the majority cites to describe decisions that are "'of such moment that they cannot be made for the defendant by a surrogate.'" Majority at 5 (quoting *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004)). Conversely, it is not akin to those decisions that may be waived by counsel as a matter of trial tactics or strategy. *See* majority at 5-6 (citing *State v. Valladares*, 99 Wn.2d 663, 664 P.2d 508 (1983) (withdrawal of pretrial suppression motion)); *Wilson v. Gray*, 345 F.2d 282 (9th Cir. 1965) (waiver of cross-examination and confrontation). There can be no doubt that had this been a criminal trial, N.P.'s counsel's statement that he had "[n]o objection" to closing the termination hearing would not be enough. Verbatim Report of Proceedings at 6.

So, why is this statement—made at a proceeding N.P. did not attend—sufficient to constitute a valid waiver in the civil context? The majority does not say. It instead analogizes the public trial right itself, albeit in the civil context, to rights we have said are different from the public trial right in the criminal context. *See* majority at 5. This is confusing at best. At worst, it suggests we regard open public trials in the civil context as nothing more than a matter of trial strategy. While I agree that N.P. validly waived his right to object to the closure, I would recognize that it is not the public trial right that is different, or of lesser moment, in the civil context. Rather, the standard for determining the validity of a waiver differs between civil and criminal cases.

In civil cases, this court has recognized that most constitutional trial rights may be subject to procedural requirements for exercising them. Thus, a civil litigant may waive very substantial rights, such as the right to a jury trial or the right to complain of a biased juror, based on the terms of a valid statute or court rule. *See, e.g.*, *State v. Kratzer*, 70 Wn.2d 566, 570, 424 P.2d 316 (1967) (recognizing inviolate right to trial by jury under article I, section 21 of the Washington State Constitution "may even be waived by inaction where the law calls for specific acts by which the right is asserted"); *Sackett v. Santilli*, 146 Wn.2d 498, 47 P.3d 948 (2002) (upholding validity of CR 38(d), providing for waiver of jury trial right by failure to make timely demand, as consistent with article I, section 21); *Basil v. Pope*, 165 Wash. 212, 218-19, 5 P.2d 329 (1931) (recognizing "well established" rule that failure to timely challenge biased juror waives right to objection after verdict).

Of significance here, the termination and adoption proceedings were joined and all parties to the proceeding were on notice of RCW 26.33.060, which provides in relevant part:

> All hearings under this chapter [adoption proceedings] shall be heard by the court without a jury. Unless the parties and the court agree otherwise, proceedings of contested hearings shall be recorded. The general public shall be excluded and only those persons shall be admitted whose presence is requested by any person entitled to notice under this chapter or whom the judge finds to have a direct interest in the case or in the work of the court.

Though this statute was not directly applicable to the termination portion of the proceedings, given the procedural posture of this case the parties were on notice

that they needed to bring any concerns about closure to the attention of the trial judge before any hearings began. The statutory basis of this notice is important when we consider counsels' representations to the court that their clients had no objection to the closure. This was not an issue that came up "on the fly" but was an integral part of the proceedings that we can expect counsel and their clients would discuss.

Without appreciating this specific context, readers of the majority opinion might get the wrong impression. The right to an open, public trial is not of lesser moment in the civil context. Indeed, we have recognized article I, section 10 "is not an abstract theory of constitutional law, but rather is the bedrock foundation upon which rest all the people's rights and obligations." *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991). A civil litigant, no less than a criminal defendant, has an "'individual right to have the proceedings open to the observation and scrutiny of the general public.'" *In re Det. of Morgan*, 180 Wn.2d 312, 325, 330 P.3d 774 (2014) (quoting *In re Det. of D.F.F.*, 172 Wn.2d 37, 40, 256 P.3d 357 (2011)). This right is not simply a matter of trial strategy, left to counsel's discretion. To the contrary, where open, public trials are concerned, the analysis we employ recognizes courts have an independent obligation to safeguard our system of justice and are not bound by the litigants' preferences. *See Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

We have never before said whether statutes and court rules addressing the particular circumstances of special proceedings may establish the moment at which

a civil litigant is required to speak up or be precluded from later claiming a public trial right violation. I believe they, just as other substantial rights, including the right to a civil jury trial, may be waived by inaction in the face of such statutes or rules. In this context, N.P.'s counsel's representation that N.P. had no objection to closure effected a valid waiver of his article I, section 10 rights. On this basis, I concur in the judgment of the court.

_____