# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Welfare of | No. 73211-1-I |
| | (consolidated with 73212-9-I, |
| J.A.W., DOB: 04/21/97, | 73213-7-I, 73214-5-I & 73215-3-I) |
| C.D-N.W., DOB: 12/14/98, | |
| S.A-M.W., DOB: 07/07/00, | DIVISION ONE |
| J.E.W., DOB: 09/12/01, | |
| R.A-L.W., DOB: 03/21/04, | UNPUBLISHED OPINION |
| | |
| Minor Children. | FILED: November 16, 2015 |

BECKER, J. — Following her convictions for the assault and death by abuse of her adopted children, the mother, who is the appellant in this case, voluntarily terminated her parental rights to her biological children and consented to their adoption. While incarcerated, she filed a pro se motion to stay the already completed termination and adoption proceedings. The court denied the motion. For the first time on appeal, the mother contends the court should have treated her motion to stay as a motion to vacate the termination and adoption agreements and appointed counsel to assist her. Because the mother fails to demonstrate manifest constitutional error, review is precluded under RAP 2.5(a).

The mother and L.W. are the biological parents of J.A.W, C.D-N.W., S.A-M.W., J.E.W., and R.A-L.W. They also adopted two children, H.W. and I.W.

In 2011, H.W. died under circumstances that led to criminal charges against the parents and agreed orders of dependency as to their biological

children. The parents were subsequently convicted of several crimes against H.W. and I.W., including homicide by abuse and/or manslaughter and first degree assault. The State petitioned to terminate the parents' parental rights.

On February 4, 2014, the mother entered a "Relinquishment of Custody, Consent to Termination/Adoption & Waiver of Right to Receive Notice of Proceedings." The document memorialized the mother's voluntary termination of her parental rights and consent to adoption of her children. It stated in part:

> I understand that after this consent is approved by the court, it is not revocable except for fraud or duress practiced by the person, department or agency requesting the consent or for lack of mental competency at the time the consent was given by me. Under no circumstances can I revoke this consent later than one year after the court approves it.

That same day, the court also entered a "Stipulation, Agreement . . . and Order Regarding Communication and Contact Between Birth Mother, Child Adoptee and Adoptive Parents." This agreement, which was signed by the mother, set forth the parties' rights and obligations regarding contact between the mother and her children. It stated in pertinent part:

> Any party's failure to comply with the terms of the agreement regarding communication or contact shall not be grounds for setting aside an adoption decree or for revocation of a written consent to an adoption after it has been approved by the judge.
> . . . .
> . . . All parties understand and agree that failure to comply with the terms in this agreed order shall not be grounds for setting aside the relinquishment of custody or termination of parental rights or an adoption decree or revocation of a written consent to an adoption after consent has been approved by the court.
> . . . Enforcement of this agreement shall only be by civil action in accordance with RCW 26.33.295.

On January 26, 2015, less than one year after relinquishing her parental rights, the mother filed a "Motion, Affidavit and Order for Stay of Proceedings." The affidavit alleged that the adopting parents "*have not been in compliance* with the Stipulation, Agreement . . . and Order Regarding Communication and Contact between Birth Mother, Child Adoptee and Adoptive Parents." (Emphasis added.) The motion then listed various ways in which the adoptive parents had violated the agreement.

At the hearing on the motion, the assistant attorney general stated that the mother "is trying to enforce the agreements made in the open adoption document." She pointed to language in the adoption agreement requiring that its enforcement be by "civil action" and noted that the mother had not named the adoptive parents in her motion to stay. She asked the court to deny the motion to stay but allow the mother to file a proper enforcement action if she chose to do so.

The mother, appearing pro se, did not dispute the attorney general's interpretation of her motion but told the court the following:

> I was advised that because it was within the one-year mark . . . that I could put a stay on the proceedings and . . . *in effect change my mind, and my backing was the fact that the open adoption agreement has not been followed.* My intentions and my understanding was that this was open communication from me with my children. . . . So . . . *what I'm asking is [if] the courts would grant my motion to stay the proceedings even though . . . they went ahead and finalized the adoption within the one-year mark and I would like to get my children in the care of [a couple present at the hearing].*

3

(Emphasis added.)  The attorney general noted that the mother was not requesting vacation of prior orders or agreements and that there was "nothing to stay at this point."  The court and the mother proceeded to discuss the status of the motion:

> THE COURT:  Well . . . my take on it. . . is that given the termination [and] the adoption -- the open adoption contract that there's nothing left to stay.  And so at this point . . . *recourse, most obviously, would be action within the open adoption and the adoption contract.*  Do you understand, [Mother]?
>
> [MOTHER]:  Um, so are you saying that that would be taken care of through a civil suit?
>
> THE COURT:  Well, that's the mechanism because at this point the actions that you are seeking to have stayed have already been concluded.
>
> [MOTHER]:  Okay.  I was under the understanding that even so I could still -- you have a year, *a mother has a year to change their mind* and it was within the one year, um, deadline as it was filed February 4th, 2014, and --
>
> THE COURT:  I'm not aware of the provision that you are referring to.
>
> [MOTHER]:  I'm sorry, I'm – I'm not able to cite that law at this time.
>
> And then also there's 12.84 it was a Senate/House bill 12.84 and it's since become an RCW supporting the mother/child relationship with incarcerated mothers with their children has already been established, so --
>
> . . . .
>
> THE COURT:  *Nothing we're doing today precludes you from taking the appropriate action.  What is happening today is that the motion to stay the proceedings that were already concluded is being denied.*
>
> [MOTHER]:  Okay.
>
> THE COURT:  Okay?
>
> [MOTHER]:  Okay.  Thank you, Your Honor.

(Emphasis added.)  The court subsequently entered an order denying the motion to stay and dismissing the action.

The mother appealed and sought appointment of appellate counsel at public expense. A different superior court judge granted her request and appointed counsel.

For the first time on appeal, the mother contends the superior court erred in denying her motion to stay because the motion was, in substance, a timely motion to vacate her consent to termination and adoption and she was constitutionally entitled to counsel for that motion. We review a court's decision denying either a motion to stay or a motion to vacate for abuse of discretion. Bunch v. Nationwide Mut. Ins. Co., 180 Wn. App. 37, 321 P.3d 266 (2014); Mitchell v. Wash. State Inst. of Pub. Policy, 153 Wn. App. 803, 821, 225 P.3d 280 (2009), review denied, 169 Wn.2d 1012 (2010). We generally do not review issues raised for the first time on appeal unless the appellant demonstrates "manifest error affecting a constitutional right." RAP 2.5(a). "Manifest" error requires a showing of actual prejudice. State v. O'Hara, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). Manifest constitutional errors may be subject to harmless error analysis. O'Hara, 167 Wn.2d at 98. Applying these principles here, we conclude that the mother fails to demonstrate manifest constitutional error.

MANIFEST CONSTITUTIONAL ERROR

The mother contends the superior court's failure to treat her motion to stay as a motion to vacate and to appoint counsel to assist her was manifest constitutional error. She notes that parents have a statutory right to counsel "at all stages of a proceeding in which a child is alleged to be dependent," RCW

5

13.34.090(2), and that the statute is rooted in the due process clause of our state constitution. In re Dependency of G.G., 185 Wn. App. 813, 826, 344 P.3d 234 (2015). The motion to stay was, in her view, a motion to vacate the termination and adoption and was filed within the consent agreement's one-year period for revoking consent to adoption. See RCW 26.33.160(3) ("Within one year after approval, a consent [to adoption] may be revoked for fraud or duress . . . or for lack of mental competency. . . . A written consent to adoption may not be revoked more than one year after it is approved by the court.") In light of those authorities, the mother argues that the motion was a stage of "a proceeding in which a child is alleged to be dependent" and that she was entitled to counsel.

Even if we were to accept the mother's broad reading of RCW 13.34.090(2), she fails to demonstrate that any alleged error was *manifest*. As noted above, manifest error requires a showing of actual prejudice. The focus of the actual prejudice standard "must be on whether the error is so obvious on the record that the error warrants appellate review." O'Hara, 167 Wn.2d at 99-100. The error must be "unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed." State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992); State v. Burke, 163 Wn.2d 204, 224, 181 P.3d 1 (2008). The alleged error in this case rests on the mother's assertion that the substance of her motion below was "that the termination orders be overturned and her parental rights restored." But that interpretation of the motion is not obvious, unmistakable, or indisputable.

6

The mother's motion and arguments below made no mention of vacating prior agreements. While the mother told the court that she believed she could change her mind within one year of the termination and adoption, she never stated that she had changed her mind about her consent to termination or adoption. Nor did she mention any of the limited grounds for vacating those agreements—i.e. that her consent was obtained by fraud or duress or that she lacked capacity to consent. Instead, she simply alleged that the adoptive parents were not complying with the adoption agreement and requested that her children be placed with different parents. Given the mother's focus on noncompliance, the absence of any clear indication below of either intent or proper grounds to vacate the prior agreements, and the prohibition in those agreements against seeking vacation or revocation due to noncompliance with the adoption agreement, we cannot say the superior court's interpretation of the motion was an obvious, unmistakable and indisputable error.

The mother also fails to make a plausible showing that the alleged error had practical and identifiable consequences in the proceedings below. O'Hara, 167 Wn.2d at 99. She claims that failure to appoint counsel is structural error that is necessarily prejudicial and never harmless. But the doctrine of structural error does not apply in civil actions. In re Detention of Reyes, No. 89465-5, 2015 WL 5612017, *2 (Wash. Sept. 24, 2015) ("the doctrine of structural error is strictly limited to criminal trials."); In re Adoption of M.S.M.-P., 181 Wn. App. 301, 313-14, 325 P.3d 392 (2014) (structural error does not apply to a public trial violation

in civil termination proceeding), affirmed on other grounds, No. 90467-7, 2015 WL 5916968 (Wash. Oct. 8, 2015).

Moreover, no showing can be made on this record that the failure to appoint counsel for a motion to vacate had any practical or identifiable consequences. The mother's sole basis for seeking placement of her children with other parents was noncompliance with the open adoption agreement. But such noncompliance is contractually and statutorily insufficient to support a motion to vacate a voluntary termination and consent to adoption. As previously noted, the mother expressly agreed that "failure to comply with the terms" of the communication and contact agreement "shall not be grounds for setting aside the relinquishment of custody or termination of parental rights or an adoption decree or revocation of a written consent to an adoption." And both the adoption agreement and RCW 26.33.160(3) barred revocation of the mother's consent to adoption "except for fraud or duress practiced by the person, department or agency requesting the consent or for lack of mental competency at the time the consent was given." Because the record reveals no arguable basis to vacate the mother's prior agreements, she cannot make a plausible showing that the failure to appoint counsel had any practical or identifiable consequences.

Finally, the mother does not argue that she was entitled to counsel for a motion to enforce the adoption agreement. But even if she had made that argument, she could not demonstrate prejudice because the court's order was

without prejudice to her pursuing an enforcement action and did not prevent her from requesting counsel for that purpose.

Affirmed.

Becker, J.

WE CONCUR:

Trickey, J

Schindler, J