# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br>J.O. and J.O.,<br><br>Minor Children.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>Respondent,<br><br>v.<br><br>SONIA OROZCO-SALGADO,<br><br>Appellant. | No. 72097-0-I<br>(Consolidated with No. 72098-8-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 2, 2015 |

LEACH, J. — Sonia Orozco-Salgado appeals an order declaring her twin boys, J.O. and J.O., dependent. She contends the order violates her statutory and constitutional rights because the court struck her answer to the dependency petition and deemed the petition's allegations admitted after she failed to appear at trial as required by a CR 43(f)(3) notice. She also contends the court erred in striking her answer without first addressing the discovery sanction factors discussed in Burnet v. Spokane Ambulance.[1] We affirm.

## FACTS

The twins were born on October 17, 2013. At that time, Sonia and the twins tested positive for amphetamines. The twins spent two weeks in intensive care.

---

[1] 131 Wn.2d 484, 933 P.2d 1036 (1997).

On October 23, 2013, social worker Debra Daniel spoke with Jose Avila, one of the twins' potential fathers. Avila told Daniel he put methamphetamines in Sonia's food several times during her pregnancy. Sonia admitted using methamphetamine when she was two months pregnant but claimed she did not know she was pregnant until later.

On October 24, 2013, Daniel imposed a safety plan. Under the plan, Sonia's housemates, Nidia and Juan Orellana, would monitor Sonia and the twins when they left the hospital and ensure that Avila did not have access to them. Sonia agreed to submit to random urinalysis.

On October 29, 2013, Sonia and the twins left the hospital. The next day, the Orellanas called Daniel and reported that Sonia and the twins had not stayed with them after they left the hospital.

On November 4, 2013, the Department of Social and Health Services (Department) filed a dependency petition. In addition to the facts recited above, the petition alleged that a friend of Sonia's called Daniel on October 30 and reported that Sonia and the twins stayed with her after they left the hospital. The friend had tried, unsuccessfully, to locate Sonia and was "really concerned about the babies."

The petition alleged that Sonia agreed, but failed, to meet with Daniel on October 30, 2013, and refused to reveal her location. Sonia's oldest child, Edith Estrada, told Daniel that Sonia submitted Estrada's urine for her urinalysis tests and sold drugs in the form of white powder and rocks in bags. The Department recommended out-of-home care for the twins due to Sonia's "negligent behaviors and inability to maintain her

-2-

sobriety," as well as her failure to engage "in any treatment or services that would provide safety measure in the home."

On November 5, 2013, the court placed the twins in shelter care. The court found that "services offered or provided to the parent(s) have been unable to remedy the unsafe conditions in the home" and that out-of-home placement should continue.

On December 23, 2013, Sonia filed an answer admitting many of the allegations in the petition.

On April 17, 2014, the Department filed an amended petition. It alleged the twins had "no parent, guardian or custodian capable of adequately caring for [them], such that [they are] in circumstances which constitute a danger of substantial damage to [their] psychological or physical development."

Trial began on April 24, 2014. Despite notice, Sonia did not appear. Citing CR 43(f),[2] the Department moved to strike Sonia's answer, deem the allegations in the petition admitted, and proceed to trial. The court asked what it should consider in deciding whether to strike Sonia's answer. The Department responded,

> [T]he mother has an obligation under the rules to appear and participate in these proceedings, and to enable the Department to examine her and to elicit information that's relevant to the proceedings. And she has failed to do so. And the rules provide that in the event that a party does not participate in the proceedings, that their answer may be stricken.
> . . . .

---

[2] CR 43(f)(3) provides in pertinent part:
  If a party . . . refuses to attend and testify before the officer designated to take his deposition or at the trial after notice served as prescribed in rule 30(b)(1), the complaint, answer, or reply of the party may be stricken and judgment taken against the party.

. . . [And] pursuant to RCW 13.34.020, it specifically says that where the rights of the children and the parent conflict, the rights of the child shall prevail. And the statute also provides that permanency shall be achieved at the earliest possible time. . . .

. . . .

. . . And . . . the information that the Court has at this time is simply that the mother is not involved with these children, has not been involved with these children for many, many months, is, we think, out of state; we don't know exactly where. And so, the idea that she should be able to dabble with the fates of her children at her whim is . . . there's simply no equitable support for that. We have a proceeding. She was given notice of the proceeding. . . . She's not here.

. . . .

. . . . It was her responsibility to maintain contact so that she could pursue her rights because she had filed an answer denying some of the allegations in the dependency petition. But, she has failed to pursue her rights. She has failed to remain in contact with her counsel, and that is why it [i]s an appropriate remedy to strike the answer and deem the allegations in the petition admitted.

The twins' counsel agreed with the Department. Sonia's counsel opposed striking the answer and asked the court to start the trial and then recess until Sonia could appear and testify.

Agreeing with the Department, the court noted, "there's no reason that's been given for her non-appearance here today" and "the only way the Court can look at it is that she chose not to appear." The court struck Sonia's answer, deemed the allegations in the petition admitted, and started the trial.

The Department called two witnesses. Social worker Megan Hall testified that she first met with Sonia on November 22, 2013. Sonia told her she "uses a lot of drugs." Hall noted that the Department had "numerous allegations of drug use by [Sonia], including positive drug screens at the children's birth." Hall offered Sonia twice weekly urinalysis and a full drug and alcohol evaluation. She offered these services

-4-

"two or three times," both in person and in service letters. When asked if Sonia engaged in any of those services, Hall said she engaged in one urinalysis test.

Hall testified that she arranged for visitation, but Sonia only visited the children four or five times throughout the case and only once in the nine weeks prior to trial. Hall testified that Sonia "lost multiple visitation contracts" and was incarcerated multiple times after the twins were removed from her care. Sonia called Hall three weeks before trial and said she was out of state. Hall had not heard from Sonia since. Hall believed Sonia was not capable of adequately caring for "infants who are at the mercy of the . . . parent caring for them" and that they would be in danger if left in her care.

The twins' guardian ad litem, Pauline Duke, testified that a dependency should be established. She noted Sonia's "lack of engagement in the proffered services," failure to establish or maintain a bond with the children, "very concerning" history of drug use, lack of treatment, and pending criminal matters.

The court admitted several exhibits, including a November 2013 shelter care order. That order included the statement that Sonia "testified and has previously represented that she agrees to substance abuse treatment." Other exhibits included a January 2014 arrest warrant for Sonia's alleged possession of a stolen vehicle and a May 2013 judgment and sentence for fourth degree assault that required her to enroll in a domestic violence program.

Sonia's counsel presented no witnesses. The court and counsel agreed, however, that Sonia could move to reopen when court reconvened in May 2014.

On May 9, 2014, court reconvened, and Sonia again did not appear. Her counsel told the court that she had agreed to participate by phone, but she had not called. The court asked counsel to present "any other information you wanted to give me" prior to closing argument. Sonia's counsel presented no additional information.

Following closing arguments, the court granted the dependency petition. The court noted the services offered by the Department and Sonia's failure to meaningfully participate in any of them. Sonia attended only 4 of a possible 100 visits with the twins. She also recently tested positive for methamphetamine in conjunction with a pending criminal matter. The court stated that its "factual findings are based upon the testimony of these witnesses combined with the Department's admitted exhibits, its petition, and any other evidence that was presented at trial." The court concluded that the statutory prerequisites for a dependency were satisfied and repeated its findings and conclusions in a memorandum order.

Sonia appeals.

## DECISION

For the first time on appeal, Sonia contends the court's decision to strike her answer and deem the petition's allegations admitted violated her statutory and constitutional rights.[3] Generally, an appellate court will not consider issues raised for the first time on appeal.[4] However, "[a] party may raise for the first time on appeal a

_____

[3] Sonia's bare recitation of boilerplate due process principles in her trial brief did not preserve the error she now asserts on appeal.

[4] State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

-6-

manifest error affecting a constitutional right."[5] "A manifest error requires a showing of

actual prejudice."[6] Actual prejudice requires a "'plausible showing by the [appellant] that

the asserted error had practical and identifiable consequences in the trial of the case.'"[7]

The appellant has the burden to demonstrate the basis for reviewing an issue raised for

the first time on appeal.[8]

Sonia fails to address RAP 2.5(a) or the relevant case law. She offers no basis

for reviewing her statutory or constitutional claims for the first time on appeal. She has

thus failed to carry her burden.

Even if Sonia had offered a basis for review, she could not establish manifest

constitutional error on this record. Primarily, she contends that the court's decision to

strike her answer and deem the petition's allegations admitted "resulted in a

dependency . . . based on unproven facts" and thus violated due process. While Sonia

and the twins were entitled to due process during the dependency proceeding,[9] the

process she received was adequate.

---

[5] In re Adoption of M.S.M.-P., 181 Wn. App. 301, 312, 325 P.3d 392 (2014), review granted, No. 90467-7 (Wash. Feb. 4, 2015); RAP 2.5(a)(3).

[6] M.S.M.-P., 181 Wn. App. at 312.

[7] Kirkman, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

[8] State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011).

[9] Dependency proceedings involve the liberty interests and constitutional rights of parents and children. In re Dependency of M.S.R., 174 Wn.2d 1, 15-18, 271 P.3d 234 (2012); see In re Dependency of K.N.J., 171 Wn.2d 568, 579-80, 257 P.3d 522 (2011). These rights are protected by due process, which includes notice, an opportunity to be heard, and the right to be represented by counsel. In re Welfare of Key, 119 Wn.2d 600, 611, 836 P.2d 200 (1992).

The adequacy of a particular process depends on a balancing of three factors: (1) the private interest at stake, (2) the risk that the procedure used will result in error, and (3) the State's interest.[10] Here, Sonia, the twins, and the State all had strong interests at stake in the dependency proceedings.[11] Those interests, however, were not as strong as the interests at stake in termination proceedings.[12] This is due in part to the fact that, unlike decisions terminating parental rights, dependency decisions are followed by review hearings and are reversible.[13]

The remaining Matthews factor—the risk that the procedure used will result in error—favors a conclusion that Sonia received constitutionally adequate process. While the court's decision to deem the allegations in the petition admitted was unnecessary, the court did not simply rely on those allegations. Rather, the court heard sworn testimony supporting those allegations, allowed cross-examination of the witnesses, and afforded Sonia the opportunity to testify or call witnesses. This greatly minimized the risk of an erroneous determination of dependency and satisfied due process.[14] Taken together, the Matthews factors indicate there was no violation of due process.

---

[10] Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); In re Dependency of J.W., 90 Wn. App. 417, 429, 953 P.2d 104 (1998).

[11] See M.S.R., 174 Wn.2d at 15-18.

[12] In re Welfare of R.H., 176 Wn. App. 419, 425, 309 P.3d 620 (2013) (because of the interests at stake in a termination proceeding, parents are afforded greater due process rights in a termination proceeding than in a dependency proceeding).

[13] See In re A.W., 53 Wn. App. 22, 27-28, 765 P.2d 307 (1988 (noting that a dependency determination is reversible through periodic review hearings at which a new finding of dependency must be made and that a party's participation in such review hearings may render any due process violations at the initial hearing harmless).

[14] See In re Welfare of S.I., ___ Wn. App. ___, 337 P.3d 1114, 1119 (2014) (holding that risk of erroneous deprivation of parental rights from default termination was

Even if Sonia could establish a due process violation, she could not establish actual prejudice. As noted above, the court's decision did not rest on unproven allegations in the petition. The court's oral and written ruling expressly state that "[t]he Court's factual findings are based upon the testimony of these witnesses combined with the Department's admitted exhibits" and the allegations in the petition. As noted above, the court heard testimony about Sonia's admitted drug use and need for treatment, her lack of visitation, her unavailability to the caseworkers and the court, and her failure to follow through with services. Sonia also admitted that she and the twins tested positive for amphetamines when they were born, that she was incarcerated throughout her pregnancy, and that she used methamphetamine during her pregnancy. There was no manifest constitutional error.

Sonia's arguments relating to Burnet are also raised for the first time on appeal and fail for essentially the same reasons. Burnet held that a court imposing harsh discovery sanctions must first expressly consider whether the discovery violation was willful, whether it substantially prejudiced the opponent, and whether lesser sanctions would suffice.[15] Assuming, without deciding, that Burnet's requirements for discovery sanctions apply in this setting, Sonia fails to demonstrate any constitutional error, let

---

minimized by court's use of "sworn testimony of one familiar with the case and an opportunity for a court to independently question such person"), petition for review filed, No. 91261-1 (Wash. Feb. 6, 2015); In re Dependency of A.G., 93 Wn. App. 268, 278-80, 968 P.2d 424 (1998) (although mother was not present or represented by counsel, no due process violation occurred because court heard testimony and made findings on substantive issues).

[15] Burnet, 131 Wn.2d at 494-97.

alone manifest constitutional error.  And for the reasons set forth above, we decline to

consider any error under Burnet.

Affirmed.

_Leach, J_

WE CONCUR:

_Trickey, J_                           _Appelwick, J_