IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

IN THE MATTER OF THE PARENTAL ) 
RIGHTS TO D.W.T. ) No. 35117-3-III
)
)
)
) UNPUBLISHED OPINION
)
)
)

FEARING, J. — We affirm the trial court's termination of parental rights of a father

to his young son.

## FACTS

Michael Tresh appeals an order terminating his parental rights to his son Doug.

Both names are pseudonyms. All of our facts come from the testimony of Department of

Children and Family Services (DCFS) Social Worker Heather Schrader during the

parental rights termination trial and from exhibits entered during the trial.

DCFS removed infant Doug Tresh from his mother, due to the mother's

incarceration and controlled substance use during October 2013 and within a month of

Doug's birth. DCFS then exerted multiple unsuccessful attempts to locate Doug's father,

Michael Tresh, by calling his only known phone number. At some unknown date before

January 7, 2014, DCFS found Tresh. On January 7, 2014, the trial court signed an order

of dependency and disposition, which order Tresh approved.

The January 2014 order of dependency listed Michael Tresh's parental deficiencies as drug abuse, domestic violence, criminal behavior, and homelessness. The order required Tresh to engage in a chemical dependency assessment and treatment, a parenting assessment and parental education, a psychological evaluation, and a domestic violence and anger management assessment and treatment. The 2014 order directed that a social worker submit referrals to various providers for the services Tresh required. Finally, the order demanded that Tresh maintain contact with DCFS.

On September 8, 2014, DCFS social worker Kendra Cox visited Michael Tresh at the Grant County Work Release Center and handed him contact information for services. We do not know the steps that Tresh exerted to procure services between September 8, 2014 and April 2016. DCFS made no additional referrals for services until September 2016. On December 4, 2014, Tresh appeared at a DCFS office to procure a bus pass, but he lacked any contact information to leave with DCFS. Except for the appearances on September 8 and December 4, DCFS lost contact with Michael Tresh after the January 2014 dependency order in part as a result of Tresh's periodic incarceration. After December 4, 2014, Tresh never contacted DCFS or notified it of his location.

Heather Schrader assumed the role of DCFS social worker in the dependency of Doug Tresh on October 11, 2015. Schrader has never met Michael Tresh in person or visited his home.

2

In December 2015, a third party informed Heather Schrader that Michael Tresh resided at the Yakima Work Release facility. In January 2016, Schrader twice telephoned Tresh's correctional officer at the release facility in order to speak with Tresh, but Schrader received no return call from the facility. Schrader called again unsuccessfully in March 2016. Schrader did not send any correspondence to the facility in an effort to contact Tresh. Tresh left the facility on April 18, 2016.

After Michael Tresh's release from incarceration in April 2016, Heather Schrader, discussed a service plan with Tresh. This testimony may conflict with Schrader's other testimony that she never met with Tresh. According to Schrader, Tresh knew of the ordered services. Nevertheless, Schrader made no referrals for court ordered services then because of a pending parental rights termination trial scheduled for June 2016. In June, the court postponed the trial until October 2016. Schrader still made no referrals based on her belief in the futility of services.

Michael Tresh underwent chemical dependency treatment while under State Department of Corrections' supervision. Otherwise, Tresh engaged in no other services listed in the January 2014 dependency order. In September 2016, Heather Schrader respectively referred Tresh for a parenting assessment, a domestic violence evaluation, and a psychological evaluation in his hometown of Yakima. Schrader acknowledged that the provision of services beginning in September 2016 would not enable Tresh to successfully parent by October.

Michael Tresh's counsel astutely questioned Heather Schrader why she scheduled services in September 2016 despite a trial date in October but failed to schedule services in April 2016 because of an impending trial date in June. Schrader responded:

> So he—I mean, he did indicated [sic] that he wanted to do services, like he wanted to visit his child. And it's our—it is part of my job to offer those, even if he's not willing to do them or if he cannot rectify those parental deficiencies.

Report of Proceedings (RP) at 55.

Michael Tresh visited Doug Tresh once when Doug was an infant. The January 2014 dependency order offered Tresh visitation rights. In April 2016, Heather Schrader arranged for visits but, while Tresh called ahead for a few visits, he failed to appear.

Heather Schrader testified that the arrangement of visitation between a child and an incarcerated parent generally exhausts three months and requires completion of paperwork and a background check. Each correctional center demands a different process for approval of visitation. She did not contact the Yakima release facility to learn of its process.

One month before trial, the foster home, in which Doug Tresh resided, opted not to adopt Doug. Thus, Doug lacks a permanent home. DCFS attempted placement with Doug's older siblings.

Doug Tresh turned the age of three a week before the termination trial. At trial, Heather Schrader testified that DCFS offered to Michael Tresh all services capable of

4

remedying his parental deficiencies in the foreseeable future. During trial, Heather

Schrader averred that Michael Tresh made no progress toward remedying his parental

deficiencies. Schrader testified that, even if Tresh had commenced services in April

2016, he would have lacked significant progress in parenting skills by the time of the

termination trial. Based on Tresh's history, she predicted that Tresh would not engage in

any services in the future.

According to Heather Schrader, the near or foreseeable future for Doug was

"now." RP at 42. Schrader further testified that, by the time of Michael Tresh's release

from prison, time had expired for Tresh to correct his deficiencies.

Heather Schrader opined that Tresh is not a fit parent for Doug. Tresh would not

become a fit parent in the near future because of his failure to participate in services, his

failure to visit Doug, and a lack of bonding with his son. Tresh lacks a motivation to

parent. Schrader advised that termination of Tresh's parental right served Doug's best

interests.

PROCEDURE

The State of Washington filed its termination of parental rights petition on

February 10, 2016. The trial court terminated Doug Tresh's mother's rights to the child

in April 2016.

The superior court first scheduled a trial for June 12, 2016, on the State's petition

to terminate Michael Tresh's rights to his son. The court periodically postponed the trial

5

until the court entered an agreed order, on October 4, 2016, that rescheduled the trial date as October 14. Michael Tresh's attorney appeared in superior court on October 14, 2016 and requested the court to continue the trial again because Tresh could not be absent from work in part due to the need to gain wages to pay child support. The trial court denied the motion and conducted a trial in Tresh's absence. The trial court noted that Tresh's inability to attend trial would likely continue. Michael Tresh does not challenge the refusal to grant a trial continuance.

During the October 14 trial, the State only called social worker Heather Schrader to testify. The trial court did not perfunctorily listen to the testimony of Schrader but asked its own questions and challenged the State to supply additional details concerning the dependency of Doug Tresh. At the conclusion of the testimony, the trial court ruled to terminate Michael Tresh's parental rights.

On January 9, 2017, the court entered written findings of fact and conclusions of law and an order terminating parental rights to Doug. The findings of fact read, in part:

> 2.12 <u>Services Offered or Provided</u>. All services ordered pursuant to RCW 13.34.130, and RCW 13.34.136, and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future, have been expressly and understandably offered or provided. These services included:
> 2.12.1 For the father these services include substance abuse evaluation, parenting/bonding assessment and education, psychological evaluation, domestic violence/anger management assessment. These services were tailored to address the father's parental deficiencies of substance abuse; a history of domestic violence, lack of parenting skills and lack of bond with the child. The father also has a history of physical abuse

6

and neglect prior to this dependency and was periodically incarcerated throughout the dependency. The father was released from prison on April 18, 2016 and was not incarcerated at the time of termination trial. The Department social worker met with Mr. [Tresh] on September 18, 2016 to discuss the service plan.

2.12.2 The father signed an agreed order of dependency and disposition on January 7, 2014. The Department was unable to locate the father throughout most of the dependency. The Department first received information regarding his whereabouts between December of 2015 and January of 2016, approximately two years after the child was found dependent. The Department used best efforts to offer services to the father. The burden is on the Department to offer services however the father was unavailable to engage in services for most of the dependency.

2.12.3 There is evidence that the father engaged in substance abuse services during the dependency as part of his Washington Department of Corrections supervision requirements.

2.13 <u>Potential for Remedial Action</u>. There is little likelihood that conditions will be remedied so that the child can be returned to the parents in the near future.

2.13.1 Which [With] the exception of substance abuse, the father has failed to engage in services ordered throughout the dependency and offered after he was located by the Department despite his indication that he was willing to do so. The father has not made progress in remedying his parental deficiencies.

2.13.2 The father has visited with the child on one occasion, when the child was an infant. The father was offered visitation at the beginning of the dependency matter but the testimony indicates he missed two visits. The father was offered visits in April of 2016, and he indicated he desired to visit with the child. A referral was made for visitation services but the father missed the visits.

2.13.3 The father's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order gives rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to him in the near future. The father has failed to rebut the presumption.

2.13.4 At the time the Department located the father the child had been in care for approximately two years. Social Worker Heather Schrader testified that the near future for this child is "now." Even if the near future for the child is not "now" it is one or two months. Even if the father had

7

engaged in services after April of 2016 there is little likelihood that he would have made significant progress by the date of the termination trial. The court takes particular note of the father's unwillingness to visit with the child in making this finding.

2.13.5  The court finds that the father is currently unfit to parent the child.

2.14  Child's Early Integration Prospects.  Continuation of the parent-child relationship diminishes the child's prospects for early integration into a stable and permanent home.  The permanent plan for this child is adoption and the child cannot be adopted until parental rights are terminated.

. . . .

2. 17  Best Interests of the Child.  Termination of the parent-child relationship is in the best interests of the child.  The testimony supports that termination is in this child's best interest so that he can achieve permanency.

Clerk's Papers at 13-15.

## LAW AND ANALYSIS

On appeal, Michael Tresh contends that the State failed to prove by clear, cogent, and convincing evidence the statutory elements required for a parental termination.  He also contends the State failed to show termination of parental rights furthered Doug Tresh's best interests.

Both the due process requirements of the Fourteenth Amendment to the United States Constitution and Washington State Constitution article I, section 3 protect a parent's right to the care, custody and companionship of a child.  *In re Welfare of Luscier*, 84 Wn.2d 135, 139, 524 P.2d 906 (1974).  Before the State may terminate parental rights, the state must establish the first six factors listed in RCW 13.34.180 by

8

clear, cogent and convincing evidence. RCW 13.34.190(1)(a)(i). Clear, cogent and convincing evidence exists when the ultimate fact at issue is shown by the evidence to be highly probable. *In re Dependency of K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995).

On appellate review, the trial court's findings in a parental rights termination proceeding must be affirmed if supported by substantial evidence from which a rational trier of fact could find the necessary facts by clear, cogent and convincing evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). Whether substantial evidence exists to support the superior court's findings is measured in light of the "highly probable" test. *In re Welfare of Carpenter*, 21 Wn. App. 814, 816, 587 P.2d 588 (1978). Under that test, the evidence must be more substantial than in the ordinary civil case in which proof need only be by a preponderance of the evidence. *In re Welfare of Hall*, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983). The evidence establishes a "high probability" when permanent deprivation is necessary for the physical and mental welfare of the child. *In re Welfare of Carpenter*, 21 Wn. App. at 816. Appellate courts defer to the trial court's credibility determinations when reviewing an order terminating parental rights. *In re Dependency of A.M.M.*, 182 Wn. App. 776, 786, 332 P.3d 500 (2014).

To prevail in a termination proceeding, the State must first prove the following six factors:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

9

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that the conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. . . .

. . . .

(f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the [DCFS] or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

RCW 13.34.180(1). If the State establishes the six factors by clear and cogent evidence,

the court must also determine whether termination is in the best interest of the child.

RCW 13.34.190.

Michael Tresh does not challenge the State's having established the first three factors listed in RCW 13.34.180(1). Tresh argues that the State failed in its proof of the last three factors found in (d) (e) and (f).

One of the six statutory requirements is the State's provision of services needed to correct deficient parenting skills. When the State seeks to terminate a parent's rights, it must show, in part, that it offered or provided all services ordered under RCW 13.34.136 and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future. RCW 13.34.180(1). To meet this statutory burden, the State must tailor the services it offers to meet each individual parent's needs. *In re Dependency of T.R.*, 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

Even when DCFS "inexcusably fails" to offer services to a willing parent, the court may still terminate parental rights if the services would not remedy the parent's deficiencies in the foreseeable future, which depends on the age of the child. *In re Dependency of T.R.*, 108 Wn. App. at 164. When the record establishes that the offer of services would be futile, the trial court can also find that the State offered all reasonable services. *In re Welfare of M.R.H.*, 145 Wn. App. 10, 25, 188 P.3d 510 (2008); *In re Welfare of Ferguson*, 32 Wn. App. 865, 869-70, 650 P.2d 1118 (1982), *rev'd on other grounds*, 98 Wn.2d 589, 656 P.2d 503 (1983).

The trial court found that the State offered or provided all ordered services and all necessary services. We observe evidence that supports this finding. The superior court

ordered Michael Tresh to engage in a chemical dependency assessment and treatment, a parenting assessment and parental education, a psychological evaluation, and a domestic violence and anger management assessment and treatment. The dependency order directed that a social worker submit referrals to various providers for the services Tresh required.

Michael Tresh contends that DCFS never referred him for services until thirty-five months after the dependency order. Nevertheless, DCFS encountered impediments in arranging for services because of Tresh's intermittent incarcerations and failure to inform DCFS of his whereabouts. Despite these impediments, on September 8, 2014, within one year of the dependency, DCFS social worker Kendra Cox visited Michael Tresh at the Grant County Work Release Center and handed him contact information for services. Tresh suggests the testimony failed to establish that Cox referred Tresh for services at that time. We question whether handing a list of services providers to the parent constitutes a referral for services that satisfies DCFS's duty to provide services. Nevertheless, the trial court, after hearing all the testimony concluded that DCFS satisfied its duty, and we conclude that inferences from the testimony and other evidence support this conclusion.

We may criticize Kendra Cox for taking no action other than handing Michael Tresh a list of providers. We may also criticize later social worker Heather Schrader for failing to aggressively contact Tresh while imprisoned and failing to arrange for services

12

immediately on Tresh's release from prison in April 2016. We find this failure, however, excusable since Tresh failed to participate in any services once DCFS arranged for services. Clear, cogent and convincing evidence established the futility of scheduling services.

The fifth of the six initial elements for the State to prove is "there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). The focus of RCW 13.34.180(1)(e) is "whether the identified deficiencies have been corrected." *In re Welfare of M.R.H.*, 145 Wn. App. at 27 (2008). Even when evidence suggests that the parent may eventually correct parental deficiencies, termination is still appropriate when deficiencies will not be corrected within the foreseeable future. *In re A.W.*, 53 Wn. App. 22, 32, 765 P.2d 307 (1988). The State need not give a parent an unlimited time to become a fit parent. *In re Dependency of T.R.*, 108 Wn. App. at 167 (2001). When it is eventually possible, but not imminent, for a parent to be reunited with a child, the child's present need for stability and permanence is more important and can justify termination. *In re Dependency of T.R.*, 108 Wn. App. at 166.

"Near future" is a key phrase in RCW 13.34.180(1)(e) and is determined from the child's point of view. *In re Dependency of A.C.*, 123 Wn. App. 244, 249, 98 P.3d 89 (2004). What constitutes "near future" depends on the age of the child and the circumstances of the child's placement. *In re Dependency of T.L.G.*, 126 Wn. App. 181,

13

205, 108 P.3d 156 (2005). The cases support the proposition that the younger the child, the shorter is the "near future." "A matter of months for young children is not within the foreseeable future to determine if there is sufficient time for a parent to remedy his or her parental deficiency." *In re Welfare of M.R.H.*, 145 Wn. App. at 28 (2008). Eight months was not in the foreseeable future of a four-year-old. *In re Welfare of Hall*, 99 Wn.2d at 844, 850-51 (1983). One year was not in the foreseeable future of a three-year-old. *In re A.W.*, 53 Wn. App. at 25-26, 31-32 (1988). Six months was not foreseeable in the near future of a fifteen-month-old. *In re Dependency of P.D.*, 58 Wn. App. 18, 27, 792 P.2d 159 (1990).

The trial court found little likelihood that Michael Tresh would remedy his parental deficiencies so that his son can be returned to him in the near future. We conclude that substantial evidence also supports this finding.

DCFS Social Worker Heather Schrader defined the foreseeable future for Doug Tresh as "now." We disagree with this characterization, particularly because of the loss of an immediate chance for adoption. Still, Michael Tresh showed no initiative over three years to improve his parenting skills. He visited his son only once shortly after the son's birth. He failed to appear for other visitation appointments. He disobeyed the order of dependency by never sharing his location with DCFS. Tresh failed to engage in any scheduled services.

Michael Tresh impliedly challenges the termination order under subsection (f) of

14

RCW 13.34.180(1) because the record does not show that the trial court considered the incarceration factors listed in the statutory section. Nevertheless, Tresh remained free at the time of trial. The trial court need consider the incarceration factors only if the parent remains imprisoned at the time of trial. *In re Dependency of D.L.B.*, 186 Wn.2d 103, 118, 376 P.3d 1099 (2016).

In addition to finding the six elements of RCW 13.34.180 by clear, cogent and convincing evidence, the trial court, before terminating parental rights, must also find by a preponderance of the evidence that termination of parental rights serves the child's best interests. RCW 13.34.190(1). The factors that establish what is in a child's best interest depend on the facts and circumstances of each case. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 572, 815 P.2d 277 (1991).

We conclude that substantial evidence supports the trial court's finding regarding Doug Tresh's best interest. Michael Tresh has demonstrated an unwillingness to father his son. Despite opportunities, Tresh has failed to engage in services or visit his son. He made no progress toward correcting the deficiencies found in the dependency order.

CONCLUSION

We affirm the trial court's order terminating Michael Tresh's parental rights to his son, Doug.

15

No. 35117-3-III
*In re Parental Rights to D.W.T.*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.